FILED
2012 Oct-04  PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

LANCER INSURANCE COMPANY,

    Plaintiff,

vs.                        CASE NO. CV-11-J-1541-NW

NEWMAN SPECIALIZED CARRIERS,
INC., et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the court in this action for declaratory judgment are motions for summary judgment and related pleadings: first, intervenor plaintiff QBE Insurance Corporation's ("QBE") motion for summary judgment (doc. 52), a brief in support (doc. 53) and evidentiary submission (doc. 55) in support thereof, defendants Jimmy and Sheila Fowler's response (doc. 62), defendant Newman Specialized Carriers Inc.'s ("Newman") response (doc. 66), and intevenor plaintiff's replies (doc. 63 & 68); and second, plaintiff Lancer Insurance Company's ("Lancer") motion for summary judgment (doc. 56), defendants Jimmy and Sheila Fowler's response (doc. 62), defendant Newman Specialized Carriers Inc.'s response (doc. 65), and plaintiff's replies (doc. 64 & 69).  Lancer moves for summary judgment on the Claim for Relief in its Complaint (doc. 1).  QBE moves for summary judgment on Count I of its Complaint. (doc. 30).

**Factual Background**

A. Underlying Litigation

On April 23, 2010, the Fowlers filed a lawsuit against Newman and Atlantic-Meeco, Inc. ("Atlantic-Meeco"), a non-party, as a result of personal injuries Mr. Fowler sustained while unloading "floating boat docks" from a flatbed tractor trailer. (doc. 56, Ex. A); *Fowler v. Newman Specialized Carrier's, Inc.*, CV 10-900022 (Ala.).  The boat docks were originally loaded on the flatbed trailer by Atlantic-Meeco on April 7, 2010, for delivery to California.  (*Id.* at ¶¶ 7, 8).  Mr. Fowler unstrapped the load of docks after reaching his destination on April 9, 2010.  (*Id.* at ¶ 11). While Mr. Fowler was unstrapping the docks, the docks fell on top of him resulting in personal injuries.  (*Id.* at ¶ 12).

The Fowlers assert negligence, wilfulness, and wantonness claims against Newman and Atlantic-Meeco.  (*Id.* at ¶¶ 8, 9 & 12).  The complaint also asserts loss of consortium on behalf of Mrs. Fowler.

B. Relationship Between Jimmy Fowler and Newman

Newman is a trucking company meeting the definition of a "carrier" as defined by the Federal Motor Carrier Safety Regulations ("FMCSR").  (*See* Newman Depo. (doc. 56-9) 62-63).  Mr. Fowler entered into a lease agreement to provide Newman a 2006 Kenworth Tractor and the labor to operate the tractor.  (*See* Lease Agreement

2

(doc. 56-11)).  The lease requires Mr. Fowler to purchase and maintain worker's compensation insurance and for Newman to provide and maintain liability and cargo insurance as required by the Interstate Commerce Commission ("ICC").  (*Id.*)  The lease also contains the following provision:

> The parties intend to create by this contract the relationship of CARRIER [Newman] and independent CONTRACTOR [Mr. Fowler] and not an employer/employee relationship.  Neither the CONTRACTOR nor its employees are or are to be considered the employees of the CARRIER at any time, under any circumstances.

(Lease Agreement (doc. 56-11 at ¶ 12)).  At the time of the accident, Newman owned the flatbed trailer and Mr. Fowler owned the tractor.  (*See* Fowler Depo.  (doc 56-10) at 136).

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* Federal Rules of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no

genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.   The nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts" to meet their burden  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party when deciding motions for summary judgment.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All "reasonable doubts"

about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  However, all "doubts" need not be so resolved.  *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).  "The moving party is entitled to 'judgment as a matter of law' when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof." *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987) (citing *Celotex*, 477 U.S. at 324).

There is a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249.  "The basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Nat'l Mining Ass'n v. Apfel*, 97 F. Supp. 2d 1070, 1076 (N.D. Ala. 1999) (quoting *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala. 1998) (citing *Anderson*, 477 U.S. at 251-252).  Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case.  *Weiss v. School Board of*

*Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## Legal Analysis

Under Alabama law, an insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint about the facts which gave rise to the cause of action against the insured. *American States Ins. Co. v. Cooper*, 518 So. 2d 708, 709 (Ala. 1987). The insurer is obligated to defend if the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005), citing *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977). Exclusions must be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy. *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.*, 641 So. 2d 247, 249 (Ala. 1994). The burden of proving applicability of a policy exclusion rests with the insurer. *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 12 (Ala. 2001).

When interpreting an insurance contract, Alabama law provides that "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide.... If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court."

6

*Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala. 2003).  A court must enforce the insurance policy as written if the terms are unambiguous.  *Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005).  Whether a clause in an insurance policy is ambiguous is a question of law to be decided by the court. *Auto-Owners Ins. Co. v. American Cent. Ins. Co.*, 739 So. 2d 1078, 1081 (Ala.1999).

There are two insurance policies at issue in this case.  The insurers both seek a declaratory judgment that there is no obligation for them to defend or indemnify Newman against the Fowlers claims in underlying state court litigation.  The court must, therefore, analyze the QBE and Lancer policies separately to determine whether there is coverage under either policy.

A. Coverage under the QBE policy

The QBE policy is a general liability policy that contains certain exclusions. QBE asserts that one of the exclusions, the "auto exclusion," bars coverage of Mr. Fowler's claims against Newman.  Defendants respond that the "auto exclusion" is not applicable because the language is ambiguous and must, therefore, be construed against the insurer.  *See Cincinnati Ins. Co.*, 641 So. 2d at 249.  Under defendants' theory, Mr. Fowler was neither operating the trailer nor unloading the trailer, thus, the "auto exclusion" in the QBE policy is inapplicable.

The "auto exclusion" in the QBE policy states that:

2. Exclusions. . . . g. Aircraft, Auto Or Watercraft
"Bodily injury" or "property damage" arising out of the
ownership, maintenance, use or entrustment to others of
any aircraft, "auto" or watercraft owned or operated by or
rented or loaned to any insured. Use includes operation and
"loading or unloading". This exclusion applies even if the
claims against any insured allege negligence or other
wrongdoing in the supervision, hiring, employment,
training or monitoring of others by that insured, if the
"occurrence" which caused the "bodily injury" or "property
damage" involved the ownership, maintenance, use or
entrustment to others of any aircraft, "auto" or watercraft
that is owned or operated by or rented or loaned to any
insured.
* * *
SECTION V - DEFINITIONS
2. "Auto" means a land motor vehicle, trailer or semitrailer
designed for travel on public roads, including any attached
machinery or equipment. But "auto" does not
include "mobile equipment".
* * *
11. "Loading or unloading" means the handling of
property: a. After it is moved from the place where it is
accepted for movement into or onto an aircraft, watercraft
or "auto"; b. While it is in or on an aircraft, watercraft or
"auto"; or c. While It is being moved from an aircraft,
watercraft or "auto" to the place where it is finally
delivered; but "loading or unloading" does not include the
movement of property by means of a mechanical device,
other than a hand truck, that is not attached to the aircraft,
watercraft or "auto."

QBE Policy (doc. 19.3) at 68, 76-77.  QBE states that the commercial truck and trailer

are an "auto" as defined by the policy and Mr. Fowler's injury incurred while

operating the "auto" or while loading or unloading the "auto."  Defendants state that

because the word "operation" is not defined in the policy, it is ambiguous. Defendants further assert that Mr. Fowler's actions at the time of injury cannot be considered "loading or unloading" because Mr. Fowler was not attempting to move the boat docks and a forklift was present–although not in use.  In other words, defendants' theory states that although Mr. Fowler was removing straps that secured the boat docks to the trailer at the time of the accident, Mr. Fowler was neither operating the trailer nor was he "loading or unloading" the trailer.

The "auto exclusion," however, does not require a finding that the Mr. Fowler was operating the trailer or that he was "loading or unloading" the trailer.  The policy's definition of "auto" includes a trailer. The policy excludes "'Bodily Injury' . . . arising out of the use . . . of any [trailer]."  The policy provides clarification that "use" includes "operating" or "loading or unloading" but it does not limit the exclusion to those specific actions.  Regardless, the use of a flatbed trailer in the commercial shipping industry is generally for the transportation of property.  Mr. Fowler's injury occurred when property, in this case boat docks, fell from the trailer. The straps Mr. Fowler was removing or loosening at the time of injury were attached to the trailer and directly involved within the use or operation of the trailer for shipping property.  Not only were the straps in keeping with operation of a trailer for commercial use, but the unloading process required the removal of the straps.  It is

clear, that at the time of the accident, Mr. Fowler was in use of the trailer for the shipping of property.  Mr. Fowler's use or operation of the trailer, therefore, led him to remove or loosen securing straps "[w]hile [property was] being moved from a[ trailer] to the place where [the property was] finally delivered."  Because the injury arises from action that falls squarely within the plain language of the "auto exclusion," the exclusion is not ambiguous.  The court must, therefore, enforce the QBE policy as written.  *Safeway Ins. Co.*, 912 So. 2d at 1143.

The court finds that there is no coverage for the "bodily injury" Mr. Fowler incurred under the QBE insurance policy.  The exclusion also specifically excludes actions alleging negligence.  Mrs. Fowler's claim for loss of consortium is also excluded because it arises from the same event of Mr. Fowler's excluded claim.  The court, therefore, finds that QBE has no obligation to defend or indemnify Newman under the QBE policy.

B. Coverage under the Lancer policy

Lancer asserts that Mr. Fowler is a "statutory employee" of Newman, therefore, Lancer owes no duty to defend or indemnify Newman because the policy contains "employee indemnification and employer's liability" and "fellow employee"

10

exclusions barring coverage.[1]   The Defendants respond that Mr. Fowler was an

independent contractor, not an employee, of Newman and thus does not fall within

either exclusion.

The Lancer policy is a general auto liability policy designed specifically for use

by motor carriers in the interstate trucking industry.   Federal law requires motor

carriers to procure at least a minimum level of public-liability insurance in order to

obtain an operating permit.   *See* Motor Carrier Safety Act (MCSA) of 1984, 49 U.S.C.

§ 13906 (2000); 49 C.F.R. § 387.1 et seq.   The purpose of this insurance requirement

is to ensure that a financially responsible party will be available to compensate

members of the public injured in a collision with a commercial motor vehicle.

"Although the Motor Carrier Safety Act places an affirmative insurance obligation

on motor carriers with respect to the public, it does not require motor carriers to

obtain coverage for 'injury to or death of [their] employees while engaged in the

course of their employment.'"   *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons

Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002) (quoting 49 C.F.R. § 387.15).

Lancer argues that the policy must be construed with regard to the MSCA and

---

[1]QBE also incorporates, by reference, Lancer's arguments that Mr. Fowler was an employee of Newman, however, the court declines to address the argument as it pertains to the QBE policy.  QBE did not brief the issue and Lancer's arguments are directed to the language and operation of the Lancer policy.  In addition, the court has found that there is no coverage under the QBE policy on separate grounds.

the body of federal case law interpreting the same because the policy is designed to comply with the requirements in the MSCA.  Lancer's reasoning is based on the fact that the MSCA requires commercial motor carriers to obtain a certain level of public-liability insurance to receive an operating permit.  *See* 49 U.S.C. § 13906. Lancer also points out that many courts have relied on the MSCA and its regulations to interpret certain provisions of commercial-transportation policies, particularly employee-indemnification and fellow-employee exclusions.  *See e.g.*, *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469 (5th Cir. 2009); *Consumers Cnty. Mut. Ins. Co.*, 307 F.3d at 366; *Perry v. Harco Nat. Ins. Co.*, 129 F.3d 1072, 1074–75 (9th Cir. 1997); *Carolina Cas. Ins. Co. v. Arkansas Transit Homes, Inc.*, No. 7:10CV01614 (JEO), 2011 WL 7719671 (N.D. Ala. Dec. 22, 2011) report and recommendation adopted as modified, No. 7:10CV1614 (VEH), 2012 WL 1340107 (N.D. Ala. Apr. 11, 2012).

Defendants respond with two basic arguments: that the court should apply the common meaning of the word "employee" ignoring the myriad of cases applying the definition of "employee" found in 49 C.F.R. § 390.5 to commercial carrier insurance policies, or the court should adopt the reasoning found in *Pouliot vs. Paul Arpin Van Lines, Inc.*, 292 F.Supp. 2d 374 (D. Conn 2003).  Defendants' first argument points out that Alabama law controls questions of interpretation of the Lancer policy.  *St.*

*Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone*, LLC, 572 F. 3d 893, 895 n. 1 (11th Cir 2009) ("A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits.)  In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed. *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007); see also Ala. Code (1975) § 27-14-22 ("All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof.").

The Lancer insurance policy was delivered to Newman in Alabama; therefore, the court agrees with defendants that Alabama law applies.  This does not, however, indicate that defendants' suggested interpretation prevails.  Alabama has specifically adopted by statute and regulation "the federal motor carrier safety regulations as prescribed by the U.S. Department of Transportation, 49 C.F.R. Part 107, Parts 171-180, Parts 382-384, and Parts 390-399 and as they may be amended in the future." Ala. Code § 32-9A-2; Ala. Admin. Code r. 760-X-1-.16.  This demonstrates the Alabama legislature's intent that the federal scheme for the regulation of motor carriers, including insurance requirements, is instructive to the court's reading of an Alabama insurance policy designed to comply with the MSCA.  *See Northland Cas.*

13

*Co. v. Rocky Harrell*, No.4:06CV00731 (JMM), 2007 WL 2319863 (E.D. Ark. Aug. 9, 2007) *aff'd sub nom. Northland Cas. Co. v. Meeks*, 540 F.3d 869 (8th Cir. 2008) (using definition of "employee" in 49 C.F.R. 390.5 where state regulation had adopted federal regulation).  Because it is the Alabama legislature and the Alabama Department of Public Safety's intent that the federal statutory scheme prevail in Alabama, the court finds the interpretation of a contract designed to comply with the MSCA must be informed by the federal regulations and the body of federal case law interpreting those regulations.

The regulation in question is 49 C.F.R. § 390.5 which defines an employee as:

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

49 C.F.R. § 390.5 (2011).  Lancer urges the court to find, as the majority of courts have found,[2] that Mr. Fowler is a "statutory employee" of Newman under this definition.  If Mr. Fowler is a "statutory employee," then the plain reading of the employee-indemnification and fellow-employee exclusions to the Lancer policy

---

[2]*See e.g.*, *Ooida Risk Retention Group*, 579 F.2d 469; *Consumers County Mut. Ins. Co.*, 307 F.3d 362; *John Deere Ins. Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000); *Perry*, 129 F.3d 1072.

excludes Mr. Fowler from coverage.[3]  In addition the Lancer policy includes a MCS-90 endorsement.[4]  The endorsement also excludes liability for injury to an employee and the injury to Mr. Fowler is excluded from coverage if he is a "statutory employee."

Defendants assert that even if the federal regulation is applicable to the policy, Mr. Fowler is not an employee under that definition.  In support, defendants urge the court to adopt the reasoning of *Pouliot vs. Paul Arpin Van Lines, Inc.*, 292 F.Supp.

---

[3]The Lancer policy states:
> This insurance does not apply to any of the following:
> . . .
> 4. Employee Indemnification And Employer's Liability
> "Bodily injury" to: a. An "employee" of the "insured" arising out of and in the
> course of: (1) Employment by the "insured"; or (2) Performing the duties of related to the conduct of the "insured's" business; or
> b. The spouse child, parent, brother or sister of that "employee: as a consequence of Paragraph a. above.
> This exclusion applies: (1) Whether the "insured" may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
> But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract." For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

(doc. 56-21 at 5).

[4]Under the authority of the MCSA, the Secretary of Transportation issued regulation 49 C.F.R. § 387.1 requiring that an MCS-90 Endorsement be attached to any liability policy issued to a certified interstate carrier.  The MCS-90 endorsement includes the following exclusion, "Such insurance as is afforded, for public liability, does not apply to injury or to death of the insured's employees while engaged in the course of their employment. . . .".  (MCS-90 Endorsement (doc. 56-28)).

2d 374 (D. Conn 2003).  The *Pouliot* court found that the parenthetical in Section 390.5, "including an independent contractor while in the course of operating a commercial motor vehicle," should be read by replacing the word "operating" with "driving."  The plaintiff in *Pouliot* was a common law independent contractor who worked as a commercial truck driver.  The *Pouliot* court determined that the definition of employee found in Section 390.5 did not apply for purposes of determining his status under the state worker's compensation statute because the plaintiff was not driving at the time of his injury.  Defendants assert that because Mr. Fowler was not driving at the time of his injury, there is similarly not a statutory employee relationship.

The court declines to adopt the reasoning in *Pouliot*.  The court first notes that the *Pouliot* court was not interpreting an insurance policy designed to comply with the MSCA.  In addition, the words operating and driving do not have the same definition.  *Compare* WEBSTER'S THIRD INTERNATIONAL NEW DICTIONARY 1581 (1993) (Operating: "engaged in some form of operation"), *with* Webster's Third International New Dictionary 692 (1993) (Driving: "managing an automobile or other vehicle on the road"); *see also* WEBSTER'S THIRD INTERNATIONAL NEW DICTIONARY 1581 (1993) (Operation: "a doing or performing of practical work or of something involving practical application of principles or processes often experimentally or as

16

part of a series of actions"). If Congress had intended for the definition of employee in Section 390.5 to be limited to someone *driving* a commercial motor vehicle, then that is the language they would have chosen. Instead, by use of the word "operating" Congress has indicated they meant to include more than solely the act of driving. The court in *Pouliot* acknowledges commercial drivers have responsibilities beyond driving when it states that "drivers have a duty to ensure that cargo on their trucks does not shift during transit. Thus, where cargo does shift, it is at least arguable that drivers should bear legal responsibility for resulting accidents." *See id* at 382. (citing 49 C.F.R. § 391.13). In this case, Mr. Fowler has admitted that the cargo that fell and caused his injury became unbalanced during transit. (*See* doc. 62-3 at 135, 171-72).

The *Pouliot* court's analysis also skipped the definition of an employee found in 49 U.S.C. § 390.5, "any individual . . . who in the course of his or her employment directly affects commercial motor vehicle safety" and instead examined the list of examples provided in the second sentence of the definition. This contrasts with the majority of courts that have found that an individual hired as a driver of a commercial vehicle meets the definition of an employee in 49 C.F.R. § 390.5. *See e.g.*, *Consumers Cnty. Mut. Ins. Co.*, 307 F.3d at 363 (finding that common law independent contractors, employed as tandem drivers, were both employees under

17

§390.5 although one was asleep in the cab and not driving at the time of the single vehicle accident); *Ooida Risk Retention Grp., Inc.*, 579 F.3d at 476 (same). Regardless, the Eleventh Circuit has "endorse[d] the holding . . . that federal law creates a statutory employment relationship between interstate carriers and the drivers of the trucks leased to them." *Judy v. Tri-State Motor Transit Co.*, 844 F.2d 1496, 1501 (11th Cir. 1988). The court, therefore, finds that a statutory employment relationship existed between Mr. Fowler and Newman for purposes of interpreting the Lancer policy. Lancer, therefore, has no duty to defend or indemnify Newman in the underlying state court action with the Fowlers.

## Conclusion

Having considered the arguments of the parties, the facts of this case and the relevant law, the court finds no genuine issues of material fact remain. Intervenor QBE is entitled to judgment in its favor and against the defendants as a matter of law on QBE's claim against defendants. Plaintiff Lancer is entitled to judgment in its favor and against the defendants as a matter of law on Lancer's claim against defendants. The court shall so Order.

DONE and ORDERED this the 4th day of October 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

18